

FILED

December 15, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

2:27 P.M.

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| LATISHA R. PERRY, | ) | Docket No. 2017-08-0466 |
| Employee, | ) | |
| v. | ) | |
| VATTEROTT CAREER COLLEGE, | ) | State File No. 19986-2017 |
| Employer, | ) | |
| and | ) | |
| ACCIDENT FUND INS. CO., | ) | Judge Amber E. Luttrell |
| Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER

---

This matter came before the Court on November 20, 2017, upon Latisha Perry's Request for Expedited Hearing seeking medical and temporary disability benefits for her alleged head and neck injuries. The central legal issue is whether she is likely to establish at a hearing on the merits that she suffered an injury to her head and neck arising primarily out of and in the course and scope of her employment. For the reasons set forth below, the Court cannot find at this time that she is likely to do so but finds she is entitled to a panel of physicians.

### History of Claim

The hearing testimony and exhibits established the following facts. Ms. Perry worked for Vatterott Career College (Vatterott) as an educational coordinator. Her job duties involved spending significant time talking to current or prospective students, typing, leading campus tours, and drafting contracts. She described her job as fast-paced and communication-intensive.

On March 9, 2017, Ms. Perry attempted to sit down in her office chair, missed the chair, and fell backwards onto the floor. As she fell, Ms. Perry testified she struck her head on a colleague's desk and hit her left elbow. Her supervisor, Melvin Cosey, heard the noise and checked on her. She told him about her fall and later told her campus

1

director, Del Wren.[1] She did not seek immediate treatment; she stated she was embarrassed by the accident.

Ms. Perry continued working that day and over the next ten days but noticed swelling in her left wrist and elbow and a "pulling sensation" in her head and neck. She testified she also experienced headaches and some dizziness when she stood up.[2] She mentioned her symptoms to Mr. Cosey and Mr. Wren in conversations at work, and Mr. Wren recommended she see a doctor if she did not improve. However, Ms. Perry testified she "wasn't a crybaby and did not want to overwhelm [Mr. Cosey]," so she did not complain on a daily basis.

Ms. Perry sought unauthorized treatment eleven days following the injury at MedPost Urgent Care on March 20 and saw Nurse Practitioner Jennifer Yarman. N.P. Yarman's history section indicated Ms. Perry reported falling from a chair at work and complained of left elbow pain. (Ex. 6.) It did not mention a history of neck pain or headaches. However, an intake comment in the record stated, "[P]atient c/o L elbow pain & headache. Patient fell out of chair on 3-9-17 at 5:20 p.m." *Id.* at 7. Ms. Perry disputed the history section of the record and testified she told N.P. Yarman "about everything going on." N.P. Yarman x-rayed Ms. Perry's elbow and diagnosed an acute left elbow contusion. She restricted her from heavy lifting at work and prescribed medication.

Two days later, Vatterott provided Ms. Perry a panel of physicians from which she selected Dr. Filipcic, a family physician, for treatment.[3] It also prepared a First Report of Injury, which indicated Ms. Perry notified Vatterott of her injury on March 21, and stated, "EE alleges elbow, arm, shoulder, neck and head pain. Went to sit in a chair. Fall, slip, or trip. Contusion. Soft tissue (head)." (Ex. 2.)

Ms. Perry saw Dr. Filipcic, who recorded in the history, "pt missed a chair and fell backward, hit her head, no LOC, has mild head soreness but no HA, c/o L neck pain and L arm pain with some tingling in L hand." (Ex. 1 at 111.) Dr. Filipcic diagnosed paresthesia and pain in the left wrist, neck, scalp, and elbow. He ordered cervical and wrist x-rays and prescribed medication. At her second visit, Dr. Filipcic documented Ms. Perry's headache complaint, which she described as "persistent" and "worsening." He noted, "[S]he did hit her head, had brief episode of dizziness, resolved." Dr. Filipcic amended his diagnosis to add intractable acute post-traumatic headache and cervical radicular pain, and ordered a head CT scan and cervical MRI. *Id.* at 116.

---

[1] Mr. Wren did not testify at the hearing. The parties agreed he no longer works for Vatterott.

[2] Ms. Perry gave somewhat varying estimates regarding the onset of her headaches and neck pain. Taken as a whole, the Court understood Ms. Perry's testimony to be that her headaches and neck symptoms began before she sought medical treatment at MedPost on March 20, eleven days following the injury.

[3] Ms. Perry signed two different C-42 panels on March 22. The parties introduced Ex. 3a., which indicated Ms. Perry selected MedPost Urgent Care. She testified Vatterott asked her to sign this panel *after* she sought treatment at Medpost on her own. She was instructed to sign it to allow the claims adjuster to pay Medpost's bill. Ms. Perry testified Ex.3b. is the panel Vatterott offered her to select a treating physician.

2

Vatterott denied authorization for the CT scan and MRI and filed a Notice of Denial stating, "head and neck injury not in the course of employment." (Ex. 4.) Vatterott accepted Ms. Perry's left elbow claim as compensable and authorized Dr. Filipcic to continue treatment for the elbow.[4]

After the denial, Ms. Perry sought unauthorized treatment from Dr. Filipcic for her head and neck, and other personal conditions.[5] She described a "crunching sensation" in her neck from the incident. *Id.* at 141. She eventually underwent a head CT scan and cervical MRI. Dr. Filipcic noted the CT scan showed a meningioma. He maintained the cervical radiculopathy diagnosis and ordered physical therapy. The records introduced into evidence through July 2017 indicated he continued treating her conservatively for her neck, meningioma, depression, hypertension, and newly diagnosed diabetes.

Ms. Perry testified she never experienced headaches prior to her injury like the ones she has had since, which she described as more severe and more frequent. Ms. Perry stated her head and neck symptoms interfered with her ability to perform her fast-paced job duties at Vatterott. She experienced problems in her neck "holding the telephone, typing, and multi-tasking." Ms. Perry worked at Vatterott until March 2017, when Dr. Filipcic took her off work. She never returned and now works for a media company as an advertising account executive. Ms. Perry requested authorized medical treatment for her head and neck and temporary total disability benefits for two periods between March and July 2017.

Melvin Cosey testified for Vatterott. He generally echoed Ms. Perry's testimony regarding their conversation immediately following her injury but stated he could not recall exactly how she described the incident. He noticed Ms. Perry holding her face when he saw her on the floor. Mr. Cosey could not recall if she mentioned her head or neck to him in the weeks that followed. He only remembered her left arm complaints. He stated she had difficulty typing and seemed "sluggish" after the injury.

## Findings of Fact and Conclusions of Law

Because this is an Expedited Hearing, Ms. Perry need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. Instead, she must present sufficient evidence from which this court might determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1).

---

[4] The parties introduced medical records from Dr. Filipcic and Dr. John Lochomes concerning Ms. Perry's ongoing left elbow treatment; however, the Court did not summarize the elbow treatment in this order as it was not a disputed issue before the Court.

[5] Dr. Filipcic's records indicated he generated separate notes for Ms. Perry's elbow treatment and her head and neck treatment. He dictated two separate notes for each date of service.

*Analysis*

Vaterott does not dispute that Ms. Perry fell at work and sustained an injury on March 9, 2017. She reported her fall to Vatterott, and it eventually prepared a First Report of Injury, provided a panel of physicians, and authorized treatment for her left elbow. Thus, the Court holds Ms. Perry presented sufficient evidence to establish an injury due to a specific incident identifiable by time and place of occurrence as required by Tennessee Code Annotated section 50-6-102(14)(A). The disputed issues before the Court were whether Ms. Perry failed to report an injury to her head and neck from her fall and whether she established medical causation for her head and neck complaints.

As to the first issue, Vatterott contended Ms. Perry only reported her elbow/wrist symptoms following the accident and did not mention her head or neck. In support of its argument, Vatterott introduced the testimony of Mr. Cosey and pointed to the first medical record from Medpost wherein N.P. Yarman's history only mentions the elbow. The Court is not persuaded by this argument. First, Mr. Cosey did not testify that Ms. Perry never mentioned her head or neck to him. Rather, he testified he really could not recall the details of her complaints besides her left wrist/elbow. He did recall Ms. Perry holding her face immediately after the fall and noticed she seemed sluggish and had difficulty performing her job duties in the days following the injury. He also stated Ms. Perry spoke more to Mr. Wren than him regarding her complaints.

Next, Vatterott contended that Ms. Perry only reported elbow complaints to N.P. Yarman's office. The Court disagrees. While N.P. Yarman only recorded elbow complaints in the history, the "intake comment" section of her record stated "[P]atient c/o L elbow pain & headache. Patient fell out of chair on 3-9-17 at 5:20 p.m." Ms. Perry testified unequivocally that she told N.P. Yarman's office about "all of her symptoms." The Court credits Ms. Perry's testimony over Medpost's record.

Lastly, Vatterott prepared a First Report of Injury, which indicated that on March 21, twelve days after the injury, Ms. Perry reported pain in her elbow, arm, shoulder, neck and head from the fall. Moreover, the report listed "soft tissue (head)" in the description of injury. This report prompted Vatterott to provide Ms. Perry a panel of physicians, and she gave a history to her panel physician, Dr. Filipcic, of head and neck symptoms as a result of the injury. The Court finds Vatterott's own First Report proves Ms. Perry specifically reported her alleged head, neck, and elbow injuries from her fall within twelve days of her injury, at the latest. Thus, the Court finds no merit in any notice argument asserted by Vatterott.

*Causation*

Vatterott next contended Ms. Perry failed to produce sufficient evidence to show she is likely to prevail on the issue of causation regarding her alleged work-related

4

injuries. In order to establish causation, Ms. Perry must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." *See* Tenn. Code Ann. § 50-6-102(14)(B) (2017). The term "reasonable degree of medical certainty" means that "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." *See* Tenn. Code Ann. §50-6-102(14)(D). Thus, causation must be established by expert medical testimony.

In this instance, Vatterott argued, and the Court agrees, that Ms. Perry did not produce any medical evidence linking her head or neck conditions to her work injury. In fact, neither party introduced a medical opinion regarding causation for Ms. Perry's head or neck conditions. As a result, Ms. Perry offered insufficient evidence to establish she is likely to prevail on the issue of compensability.

However, Ms. Perry does not have to prove compensability to establish Vatterott's obligation to provide a panel of physicians from which she may choose an authorized physician. *McCord, supra,* at *16-17. In *McCord,* the Workers' Compensation Appeals Board found that:

> [W]hether the alleged work accident resulted in a compensable injury has yet to be determined. Therefore, while Employee has not proven by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of employment, she has satisfied her *burden at this interlocutory stage* to support an Order compelling Employer to provide a panel of physicians.

*Id.* at *17 (emphasis added). Thus, the question becomes whether Ms. Perry has provided sufficient evidence to satisfy her "burden at this interlocutory stage" that she is entitled to a panel of physicians for her head and neck. The Court finds she did.

Ms. Perry testified credibly concerning her neck symptoms and headaches that followed her March 9, 2017 work-injury. As previously stated, Ms. Perry also provided adequate notice of her alleged head and neck injuries. Taken as a whole, the medical records from Medpost and Dr. Filipcic are consistent and support Ms. Perry's testimony regarding her history of injury and symptoms that followed. While Vatterott provided a panel of physicians from which Ms. Perry selected Dr. Filipcic, it promptly denied authorized treatment for any condition besides her elbow.

Based on the foregoing, the Court holds Ms. Perry provided sufficient evidence to satisfy her "burden at this interlocutory stage" that she is entitled to a panel of physicians for her alleged head and neck injuries. As a result, Vatterott is ordered to provide a panel for Ms. Perry's head and neck and authorize such treatment as is reasonable, necessary, and causally related to the work accident in accordance with Tennessee Code Annotated

5

section 50-6-204(a)(1)(A).

*Temporary disability benefits*

Because Ms. Perry has not demonstrated she is likely to prevail at a hearing on the merits on the issue of medical causation at this stage of the proceedings, the Court cannot award temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Vatterott Career College shall provide a panel of physicians for Ms. Perry's head and neck and authorize such treatment as is reasonable, necessary, and causally related to the work accident in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A) (2017).

2. Ms. Perry's request for temporary disability benefits is denied.

3. **This matter shall be set for a telephonic Status Hearing. The Court's legal assistant, Mrs. Woods, will contact the parties with dates for the hearing and the parties shall promptly reply regarding their availability.**

ENTERED this the 15th day of December, 2017.

_____
**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

6

# APPENDIX

Exhibits:
1. Medical Records (collective exhibit)
2. First Report of Injury
3. Panel of Physicians
   a. MedPost panel
   b. Dr. Filipcic panel
4. Notice of Denial
5. Wage Statement
6. MedPost records (collective)

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order Setting Case for Show Cause Hearing
4. Order Granting Counsel's Motion to Withdraw
5. Order Granting Additional Time Following Show Cause Hearing
6. Request for Expedited Hearing
7. Motion to Allow Telephonic Appearance
8. Order Granting Motion to Allow Telephonic Appearance
9. Employer's Pre-Hearing Statement
10. Employer's Witness List
11. Employer's Exhibit List
12. Employee's Pre-Hearing Statement
13. Employee's Exhibit List
14. Employee's Witness List

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 15th day of December, 2017.

| Name | Via Email | Service sent to: |
|---|---|---|
| Emily Bragg, Esq., Attorney for Employee | X | ebragg@forthepeople.com |
| Gordon Aulgur, Esq., Attorney for Employer | X | Gordon.aulgur@accidentfund.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
Wc.courtclerk@tn.gov

8